IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-00752-RBJ

ROGER S. ARELLANO,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

The Court here reviews the Commissioner's denial of Roger S. Arellano's application for disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on November 3, 2011. The Court apologizes to the parties for the delay in resolving the case.

**Facts**

Procedural Background

On April 3, 2007, Mr. Arellano filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. R. at 15. In both applications Mr. Arellano alleged a disability onset date of January 15, 2002. *Id.* Mr. Arellano's applications were initially denied on July 30, 2007. *Id.* He then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 16, 2009, with

Mr. Arellano and his attorney appearing in Colorado Springs, Colorado. *Id.* Dennis J. Duffin, a vocational expert ("VE"), also appeared at the hearing. *Id.*

On January 24, 2011, ALJ Kathryn D. Burgchardt issued a decision denying Mr. Arellano social security benefits. R. at 12. Mr. Arellano pursued an internal appeal and provided additional medical evidence and legal briefs. R. at 5–6. The Appeals Council denied his request to review the ALJ's decision on January 25, 2011. R. at 1. The present case was filed on March 24, 2011.

### Mr. Arellano's Relevant Medical History

Mr. Arellano was born on February 11, 1959, and was 42 years old on the alleged disability onset date in January 2002. R. at 26. Mr. Arellano initially injured his back at work in October 2001and again injured his back and neck in a car accident in September 2002. R. at 20. He began physical therapy in October 2002 but was discharged in December 2002 following "no shows" to three appointments. R. at 20, 460.

In January 2003, Dr. Julius Budnick began treating Mr. Arellano for his back and neck pain. R. at 534. In April 2003, Dr. Budnick referred Mr. Arellano to Dr. Dale P. Mann for a psychological evaluation. R. at 549–53. Dr. Mann diagnosed a pain disorder and major depression. *Id.* Dr. Budnick continued treating Mr. Arellano until September 2003 and recommended "light-duty restrictions" on September 17, 2003. R. at 521.

Mr. Arellano was incarcerated in federal prison from December 2004 to March 2007. R. at 22. During his incarceration, Mr. Arellano had medical restrictions to "lower bunk, no duty due to medical condition, no food service work, soft shoes only, no prolonged standing, and no lifting over 15 lbs." R. at 369.

After his release, Mr. Arellano was examined on April 27, 2007, by Dr. James D. Brooke to determine eligibility for state medical assistance. R. at 358–59. Dr. Brooke concluded that Mr. Arellano was totally disabled based on his physical or mental impairments. On July 23, 2007, Dr. David Gibbons performed a consultative medical examination on behalf of the Commissioner and noted that "[n]o objective findings are elicited to substantially corroborate (or refute) limitations in the claimant's ability to sit, stand and/or walk in an 8-hour work day with normal breaks." R. at 384. On July 27, 2007, Dr. Alberta Ziomek reviewed Mr. Arellano's mental health records and opined that he suffered from depression that was not severe and was not expected to last more than twelve months. R. at 385, 397.

On July 30, 2007, Sara Jett, a non-physician single decisionmaker ("SDM"), *see* 20 C.F.R. § 404.906(b)(2), conducted a physical RFC assessment. R. 399–406. The SDM listed chronic low back pain, history of degenerative changes in cervical spine, and frozen shoulder syndrome in her diagnoses of impairments. R. at 399. She listed as exertional limitations that Mr. Arellano could occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. R. at 400. The SDM did not find any other limitations. R. at 401–03.

Dr. Justin Lincoln evaluated Mr. Arellano in late September 2007 for federal probation purposes. R. at 484–86. Dr. Lincoln concluded that Mr. Arellano suffered from, *inter alia*, depression and mixed personality disorder. R. at 484–86. On October 11, 2007, Mr. Arellano began mental health treatment with Dr. Jeff Harazin. R. at 578. On April 24, 2008, Dr. Harazin opined that based on his major depressive order, Mr. Arellano was completely disabled for more than six months, but also that the disability was expected to last less than twelve months. R. at 407–08. On November 6, 2008, Dr. Harazin also responded to a letter from Michael

3

Fitzgibbons, a certified rehabilitation counselor evaluating Mr. Arellano's ability to return to work, that "[n]ot only does Mr. Arellano's psychiatric condition preclude him from working but so does his physical condition." R. at 409–10. Mr. Fitzgibbons likewise opined, based on a review of Mr. Arellano's medical history, that he is unable to engage in substantial and gainful work activity. R. at 417.

ALJ's Decision

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine whether Mr. Arellano is disabled for Social Security purposes. At step one, the ALJ found that Mr. Arellano had not engaged in substantial gainful activity since January 15, 2002, which is the alleged onset date. R. at 17. At step two, the ALJ found that Mr. Arellano's severe impairments included "lumbar and cervical degenerative disc disease, frozen left shoulder syndrome, and major depressive disorder." R. at 17. At step three, the ALJ determined that the Mr. Arellano "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. at 18.

Step four requires the ALJ to assess Mr. Arellano's residual functional capacity ("RFC") in light of the medical impairments and determine if the he is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Mr. Arellano has the RFC "to perform light work . . . except with avoidance of overhead lifting with the left upper extremity, and would require work which is simple, unskilled, with one, two, or three step instructions, not in close proximity to co-workers and with minimal direct contact with the general public." R. at 19. Mr. Arellano had previously worked as a factory worker, HVAC installer, and maintenance

supervisor. R. at 26. Based on the RFC assessment, the ALJ found that Mr. Arellano is unable to perform any past relevant work. *Id.*

At step five, the ALJ, after considering Mr. Arellano's age, education, work experience, and RFC, found that he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* In making this determination, the ALJ relied on testimony at the hearing by a vocational expert ("VE"). *Id.* The VE testified that an individual with Mr. Arellano's age, education, work experience, and RFC would be able to perform the requirements of jobs such as bottling line attendant, vegetable sorter, and pamphlet distributor. R. at 26–27. The ALJ thus denied Mr. Arellano's claim for disability benefits. R. at 27.

### Standard of Review

This appeal is based upon the administrative record and the briefs submitted by the parties. When reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992)). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). More than a scintilla, but less than preponderance is required. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial

evidence." *Id*. The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

### Conclusions

Mr. Arellano raises three issues: (1) the ALJ failed to properly consider and weigh the medical opinions regarding his physical and mental impairments, (2) the ALJ's RFC finding is not supported by substantial evidence, and (3) the ALJ failed to state her RFC finding on a function-by-function basis. I address these arguments in turn.

#### 1. ALJ's Consideration of the Medical Opinions

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The opinion of a treating physician is given controlling weight "as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing 20 C.F.R. § 401.1527(d)(2)).

Even if the ALJ does not give "controlling weight" to the opinion of a treating physician, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). These factors are:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;

>    (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
>    (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1301) (internal quotation marks omitted). The ALJ, however, is not required expressly to apply each of the six relevant factors. *Id.*

If a treating physician's opinion is rejected, the ALJ must articulate "specific, legitimate reasons for his decision." *Hamlin*, 365 F.3d at 1215 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Furthermore, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

### *ALJ's Consideration of Medical Opinions Regarding Physical Impairments*

Mr. Arellano argues that the ALJ erred by according little or no weight to the opinions by treating physician Dr. Budnick and examining physician Dr. Brooke, and instead according significant weight to the opinion by examining physician Dr. Gibbons.[1]

The ALJ concluded that Dr. Budnick's opinions were not entitled to weight because "they are reflective of a limited time span and are not consistent with the overall objective findings." R. at 21. The ALJ also rejected the opinion of Dr. Brooke, who examined Mr. Arellano on April 24, 2007, and who opined that Mr. Arellano was disabled to the extent that he is unable to work at any job for six or more months. R. at 358–59. The ALJ found that opinion unpersuasive because "it is on an issue reserved to the Commissioner . . . and it is not supported

---

[1] Mr. Arellano also argues that the ALJ improperly accorded weight to the opinion by the SDM. Because the SDM opinion is not a medical opinion to be weighed by the ALJ, I discuss the ALJ's reliance on that opinion below in determining whether the ALJ's RFC assessment is supported by substantial evidence.

7

by any objective exam findings or the relative lack of treatment since 2003, including no reported treatment since [Mr. Arellano's] 2007 release from prison." R. at 22.

Instead, the ALJ relied on an opinion by Dr. Gibbons, a consultative examining physician for the Commissioner. R. at 22–23. Dr. Gibbons also only examined Mr. Arellano once, on July 23, 2007. R. at 384. Dr. Gibbons' functional assessment stated:

> No objective findings are elicited to substantially corroborate (or refute) limitations in the claimant's ability to sit, stand and/or walk in an 8-hour work day with normal breaks. The claimant utilizes a cane for ambulation. No objective findings are elicited that would corroborate (or refute) limitations in the claimant's ability to lift or carry a weight that would be considered usual or normal for a person of this claimant's age and body weight. The claimant does not demonstrate any postural limitations in stooping or crouching but does limit forward bending to 20 degrees secondary to pain versus submaximal effort. The claimant does not demonstrate any limitation in reaching, handling, feeling, grasping or fingering. The claimant has no apparent visual, communicative or workplace environmental limitations.

R. at 384.

Mr. Arellano argues that the ALJ erred in rejecting Drs. Budnick and Brooke's opinion while adopting the opinion of a non-treating physician, Dr. Gibbons. I agree for two reasons. First, the ALJ erred when she failed to articulate "specific, legitimate reasons for his decision" to reject a treating physician's assessment. *Hamlin*, 365 F.3d at 1215. Although the ALJ states that Dr. Budnick's opinion "is not supported by any objective exam findings," she does not explain which objective findings are inconsistent with Dr. Budnick's opinion or how they are inconsistent. R. at 21. Instead, the ALJ lists Dr. Budnick's findings—some of which is consistent with his conclusion for "light-duty restrictions," such as an MRI showing multilevel degenerative disc disease—and merely labels those examination findings "benign." *Id.* However, it is well-established that "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory

8

medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). The ALJ fails to explain how the medical evidence she listed is contradictory to Dr. Budnick's opinion, beyond her own lay opinion that the results are "benign."

The ALJ similarly does not provide adequate explanations for why she found Dr. Brooke's opinion unsupported by the objective exam findings. The Commissioner argues that Dr. Brooke's opinion was rejected because it "was not supported by any clinical or diagnostic techniques, and he did not cite any objective medical evidence in support of his opinion." [Docket #15 at 12.] The ALJ, however, does not state this as her cause for rejecting Dr. Brooke's opinion. The ALJ's decision must be "evaluated based solely on the reasons stated in the decision," and not based on counsel's *post hoc* rationalizations. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Second, "[t]he treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Because deference is given to treating physicians' opinions, other evidence is weighed "to see if it outweighs the treating physician's report, not the other way around." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). Dr. Budnick treated Mr. Arellano over a dozen times in the course of over eight months, R. at 521–34, whereas Drs. Brooke and Gibbons were both one-time examining physicians. Nevertheless, out of all the medical opinions in the record, the ALJ only accorded weight to Dr. Gibbons' consultative examination. The

ALJ's decision provides no discussion on how she weighed Dr. Gibbons' opinion against Dr. Budnick's opinion.

Although I express no opinion as to what weight, if any, the ALJ should give to these medical opinions as to Mr. Arellano's physical impairments, the ALJ on remand must provide sufficient explanations for her weighing of them and ensure an adequate record upon which to base her decision.

### *ALJ's Consideration of Medical Opinions Regarding Mental Impairments*

Mr. Arellano argues that the ALJ erred by failing to identify the weight she gave to the opinions by Drs. Mann and Lincoln and by rejecting Dr. Harazin's opinion. Mr. Arellano also argues that the Appeals council did not sufficiently evaluate the opinion by a treating psychotherapist, Michael H. Snider.

As to Drs. Mann and Lincoln, the Commissioner contends that the ALJ "implicitly" accorded their opinions significant weight and that any failure to state the weight given to those opinions is harmless error. [#15 at 14.] Although the Commissioner is correct that the principle of harmless error may be applicable in a Social Security disability case, the Tenth Circuit has cautioned against application of the harmless error doctrine so as to "avoid usurping the administrative tribunal's responsibility to find the facts" and to prevent "violating the general rule against post hoc justification of administrative action." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The doctrine should apply only when the Court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*[2]

---

[2] The Commissioner argues that Mr. Arellano bears the burden of showing any error was harmful or has prejudiced him, a standard drawn from outside of the social security context. [#15 at 13.]

Remand is therefore appropriate where, as here, an ALJ does not make any articulations as to the weight given to a medical opinion. "After considering the pertinent factors the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation marks and brackets omitted). The court "cannot simply presume the ALJ applied the correct legal standards in considering [the] opinion" absent findings explaining the weight assigned to it. *Id.*; *accord Lopez v. Astrue*, 371 F. App'x 887, 891–92 (10th Cir. 2010); *Victory v. Barnhart*, 121 F. App'x 819, 826 (10th Cir. 2005).

As to Dr. Harazin, Mr. Arellano argues that the ALJ erred in rejecting his opinion and that the ALJ failed to meet her duty to contact Dr. Harazin to clarify the record if the ALJ was unable to find evidentiary support for the opinion. The ALJ found Dr. Harazin's opinion "largely unpersuasive" because it is inconsistent with his own treatment notes, does not set forth specific limitations, is conclusory and not supported by other medical evidence. R. at 24–25. The Commissioner responds that the ALJ properly rejected Dr. Harazin's opinion, and the duty to contact Dr. Harazin would have been triggered only if the ALJ finds that the evidence is inadequate, not if the ALJ rejects the opinion. [#15 at 14.]

Again, as a treating source, Dr. Harazin's opinion is generally entitled deference. *Hamlin*, 365 F.3d at 1215. "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." *Robinson*, 366 F.3d at 1084 (citing 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek

---

The Tenth Circuit, however, has rejected "deviat[ing] from *Allen*'s controlling formulation of the harmless error standard to be used in social security cases." *Armijo v. Astrue*, 385 F. App'x 789, 792 n.4 (10th Cir. 2010).

11

additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")).[3]

Here, the ALJ's analysis seems to hinge on the fact that she believed Dr. Harazin's treatment notes contradicted his own finding of total disability. R. at 24–25. She also states that she was not persuaded by Dr. Harazin's opinion because "Dr. Harazin was only allowed to select from pre-determined choices on the questionnaires, without definitions or the ability to provide significant narrative." R. at 25. This is precisely the kind of "conflict or ambiguity" that the regulations anticipated as triggering the ALJ's duty to recontact Dr. Harazin, a duty that is particularly significant given Dr. Harazin's status as a treating source.

Finally, Mr. Arellano challenges the Appeals Council's consideration of additional evidence of an opinion by a treating source, Mr. Snider. "[P]ursuant to 20 C.F.R. 404.970(b) . . . 'new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence.'" *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994)). The additional evidence must be "(a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." *Id.* (internal citation and quotation marks omitted).

---

[3] These regulations cited by the parties and by the *Robinson* court have since been amended, effective March 26, 2012, but this Court reviews whether the ALJ applied the correct legal standard at the time that she issued her decision in January 2011. *See Coffel v. Astrue*, No. 11-1347-JWL, 2012 WL 5831194, at *3 (D. Kan. Nov. 16, 2012).

If, however, "the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion." *Martinez v. Astrue*, 389 F. App'x 866, 868–69 (10th Cir. 2010). Courts must "take the Appeals Council at its word when it declares that it has considered a matter." *Id.* (internal citation and quotation marks omitted). Although the Appeals Council here did not provide further discussion, it did list the opinion by Mr. Snider as one exhibit it considered and found that it did not provide a basis for changing the ALJ's decision. R. at 1–2, 4. Accordingly, this Court perceives no error in the Appeals Council's review of the new evidence.

In sum, although I again express no opinion as to what weight, if any, the ALJ should give to these medical opinions, the ALJ on remand must further develop the record as to Mr. Arellano's mental impairments, including providing additional explanation as to the weight assigned to Drs. Mann and Lincoln and seeking clarifications, if possible, from Dr. Gibbons.

2. ALJ's RFC Finding

Mr. Arellano challenges the RFC finding as not being supported by substantial evidence. He argues that (1) the ALJ substituted her own opinion for those of physicians in evaluating the medical evidence; (2) the limitations in the RFC are not supported by Dr. Gibbons' opinion, which did not contain any limitations; and (3) the ALJ improperly relied on the opinion of the SDM.

As to the first argument raised by Mr. Arellano, the Court observes that its analysis "may be affected by the ALJ's treatment of this case on remand," namely, how the ALJ accords weight to the medical opinions as discussed above. *Sissom v. Colvin*, No. 12-6131, 2013 WL 765302, at *5 (10th Cir. Mar. 1, 2013) (unpublished) (declining to review whether RFC is supported by substantial evidence where remanded for error in evaluating medical opinion); *Watkins*, 350 F.3d

at 1299 (same). However, as guidance on remand, the ALJ must ensure that she does not overstep her bounds by substituting her lay medical judgment for those of medical professionals treating or examining Mr. Arellano. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). Evidence also cannot be substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Secondly, the Court disagrees with Mr. Arellano with respect to his argument that the ALJ erred by adding limitations to Dr. Gibbons' opinion, which contained none. The ALJ here discounted all other medical opinions but Dr. Gibbons' opinion and went on to temper that unfavorable opinion in Mr. Arellano's favor by adding the exertional limitations. Although the Court expresses its same reservations about the evaluation of and weight attributed to Dr. Gibbons' opinion, the Court concludes that "if a medical opinion adverse to the claimant has *properly* been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (emphasis added). "The ALJ could have been more explicit in tying this mitigating gesture to evidence in the record," but the Court finds "no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit." *Id.*

Finally, Mr. Arellano challenges the ALJ's conclusion that "[t]he above-stated finding of residual functional capacity is consistent with and supported by," *inter alia*, the opinion by the SDM. R. at 25. An opinion by a SDM is not a medical opinion and is worthy of no weight in an ALJ's RFC assessment. *See, e.g.*, *Ogden v. Astrue*, No. 10-cv-2450, 2012 WL 917287, at*4 (D. Colo. Mar. 19, 2012) (holding that "the opinion of an SDM, who is not a medical professional of any stripe, is entitled to no weight"); *Corona v. Astrue*, No. 09-cv-02439-WJM-KMT, 2011 WL

4591958, at *2 (D. Colo. Oct. 4, 2011) (same and listing cases); *Ky v. Astrue*, No. 08-cv-00362-REB, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009) (same).

The Commissioner argues that "the ALJ recognized that the single decision maker was not an acceptable medical source, and contrary to Plaintiff's assertion, did not give any weight to her opinion." [#15 at 12–13.] The Commissioner makes no separate argument beyond stating that, despite the RFC's similarity to the SDM's decision, the ALJ properly considered the evidence. In fact, the functional limitations espoused by the ALJ are found only in the SDM's opinion and nowhere else in the medical record. *Compare* R. at 19–20, 57–58 *with* R. at 400. Although the ALJ disclaims the SDM's opinion as not being "an acceptable medical source," she not only stated that her findings were "consistent with *and supported by*" the SDM's opinion in part, but she also failed to show how the RFC's limitations were supported by any specific reference to the medical evidence in the record. R. at 25 (emphasis added). At best, the Court finds that the ALJ's decision was unclear in her evaluation of the SDM opinion. On remand, the ALJ is instructed to accord no weight to the opinion of the SDM.

3. Function-by-Function Basis

Mr. Arellano's lastly challenges the ALJ's failure to complete a function-by-function assessment of his ability to perform work. A proper RFC assessment "must address both the remaining exertional and nonexertional capabilities of the individual." SSR 96-8p, 1996 WL 374184, at *5. "The ALJ must assess the 'physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching).'" *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1545(b)). "Each of

15

the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (citing SSR 96-8p, 1996 WL 374184, at *5).

The Commissioner cites one case, *Ren v. Astrue*, No. 08-cv-01242-LTB, 2009 WL 3497785, at * 6 (D. Colo. Oct. 29, 2009), to support his position that a function-by-function analysis is "less critical" when the ALJ determines that the Plaintiff is unable to do past relevant work. The Commissioner additionally argues that even though "the ALJ's decision could have been better organized, it is apparent that the ALJ reached her findings regarding Plaintiff's exertional limitations only after she considered all the evidence and drew her own conclusions regarding Plaintiff's abilities on a function-by-function basis." [#15 at 17.]

This analysis by the ALJ is not "apparent" to me. The ALJ failed to state any function-by-function findings, beyond stating that the plaintiff retained an RFC for light work.[4] Unlike the ALJ in *Ren*, she even failed to discuss "in detail the various medical reports relating to Plaintiff's ability to perform all seven strength demands." It is unavailing on review that the Commissioner believes those findings are "implicit" from the ALJ's RFC determination of light work. Remand is appropriate where "[t]here is no discussion of 'the maximum amount of each work-related activity [plaintiff] can perform,' nor is there any 'narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts . . . and nonmedical evidence.'" *Southard*, 72 F. App'x at 784–85 (emphasis added) (citing SSR 96–8p, 1996 WL 374184, at *7).

**Order**

---

[4] The Commissioner also argues that there is no error because the ALJ included a function-by-function assessment when she posed a hypothetical question to the VE. R. at 57–58. The ALJ's decision, however, must be "evaluated based solely on the reasons stated in the decision." *Robinson*, 366 F.3d at 1084.

The decision of the ALJ is reversed. The case is remanded to the Commissioner for proceedings consistent with this order.

DATED this 18th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge